THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD PACK, Defendant-Appellant.

(No. 75-63;

Fifth District—January 15, 1976.

Stephen P. Hurley and Thomas F. Sullivan, Jr., both of State Appellate Defender's Office, of Mt. Vernon, and Larry Mackey, Law Student, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, Ronald Pack, pleaded guilty to one count of attempt murder and one count of robbery in the Circuit Court of Williamson County on June 3, 1974, and was sentenced to a term of four to forty years. On appeal, defendant contends that the trial court erred in denying his motion to withdraw the guilty pleas; that the court erred in failing to order a competency hearing; that entry of judgment on the robbery charge was improper; and that the trial court erred in imposing a maximum sentence of forty years.

On June 3, 1974, defendant appeared in open court, waived indictment and counsel and entered a plea of guilty to both offenses charged. No question is raised in the appeal about the court's compliance with Supreme Court Rules 401 and 402. (Ill. Rev. Stat. 1973, ch. 110A, pars. 401, 402.) In late June a presentence report was filed and apparently based on information contained therein, the court appointed the public defender to represent the defendant. On September 27, defendant filed a motion to withdraw the guilty pleas which was denied on November 17. The next day a sentencing hearing was held and defendant was sentenced to four to forty years.

Defendant first argues that the trial court should have permitted him to withdraw his guilty pleas because he had a potentially valid defense to the offenses charged of which he was unaware at the time of the plea proceedings. He contends that the psychiatric history contained in the presentence reports reflected a serious question of his sanity at the time the offense was committed and that, therefore, he should have been allowed to withdraw the plea in order to explore further his course of action in this regard; although, the possibility of this defense was not suggested to the trial court in the motion filed to withdraw his plea and was suggested only inferentially by the proceedings occurring subsequent to his guilty plea.

■■ It is clear that the decision to allow a defendant to withdraw a

plea of guilty is within the sound discretion of the court. (*People v. Cook*, 1 Ill.App.3d 292, 274 N.E.2d 209 (1971); *People v. Johnson*, 28 Ill.App.3d 902, 329 N.E.2d 900 (1975).) This discretion will be disturbed only where it appears that the decision to plead guilty was based upon a misapprehension of the facts or law, that defendant has a defense worthy of consideration or where a serious doubt of guilt exists and where a trial of the accused would better serve the ends of justice. (*People v. Spicer*, 47 Ill.2d 114, 264 N.E.2d 181 (1970); *People v. Johnson.*) The only basis here advanced for the withdrawal of the plea is that defendant possessed a potentially valid defense of insanity.

There is nothing in the record, however, to indicate that this defense was available. The psychological reports in the presentence report, upon which defendant bases his argument, show that defendant may have had some organic brain disfunction, epilepsy, a psychosis as a result of hallucinogenic drugs, or perhaps merely a feigned mental illness. The only definite statement the examining doctors could make was that at times defendant could erupt in explosively aggressive behavior because of his personality. Nowhere do the doctors' reports suggest that the defendant lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. (Ill. Rev. Stat. 1973, ch. 38, par. 6—2.) At most they indicate an abnormality manifested only by antisocial conduct which is insufficient to establish insanity. *People v. Elliott*, 32 Ill.App.3d 654, 336 N.E.2d 146 (1975).

■■ The record does not establish that defendant was unfit to enter a plea or be sentenced but rather that he understood the nature of the charges against him and was able to assist in his defense. (*People v. Heral*, 25 Ill.App.3d 806, 323 N.E.2d 138 (1975); Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(a).) The psychiatric reports at most reflect that defendant suffered from a sociopathic personality with psychotic features and psychological disturbances, which, by themselves, do not establish unfitness. (*People v. Carter*, 16 Ill.App.3d 842, 306 N.E.2d 894 (1974); *People v. McElroy*, 125 Ill.App.2d 237, 260 N.E.2d 410 (1970).) Furthermore, in the trial court, defendant sought only to have his pleas withdrawn on the ground that they had been induced by threats and promises. Defendant's trial counsel expressly disclaimed any desire to challenge the guilty plea on fitness grounds. Thus we believe that defendant's claim that he was unfit to enter a guilty plea is without merit.

■■ Defendant next contends that the court raised the question of defendant's fitness but erred in failing to hold a hearing on this issue. Section 5—2—1(b) of the Unified Code of Corrections (Ill. Rev. Stat.

1973, ch. 38, par. 1005—2—1(c)) requires the trial court to hold a hearing and determine an accused's fitness for sentencing whenever a bona fide doubt as to witness exists. Defendant argues that the court raised the question of his fitness but determined that defendant was fit without ordering that a determination of that issue be made, thus violating the statutory procedure. Since it is evident that no order was made nor hearing held to determine defendant's fitness, the issue is solely whether the question of fitness was ever raised. Defense counsel expressly disavowed any attempt to raise this issue and the State did not seek to have defendant declared unfit. Defendant contends that the trial court, in denying his motion to vacate the guilty plea, indicated that it had raised the question of defendant's fitness. The trial court said:

> "* * * I do not see how it can be said here that he did not know what he was doing; and therefore, this Court does not find that his plea of guilty ought to be vacated * * *. Now all the matters are contained in here, and after hearing all the evidence I cannot see that this plea ought to be set aside so the Motion will be denied. I would further state, for the record, that I did bring this matter up. This matter really started coming up when Mr. Pack was brought before this Court for sentencing. The Probation Officer is the one who raised some questions, in his presentence report, as having received at one time, some mental treatment and that's when the Court started questioning and looking into this question. But I cannot, after hearing all the evidence today find that the defendant did anything but voluntarily and understandingly make this plea of guilty * * *."

The court's inquiry was prompted by a presentence report which stated that the defendant had been admitted on a physician's certificate and examined at Anna State Hospital in December, 1973, as a result of an alleged act of deviate sexual conduct with a six-year-old female. He was diagnosed as having a personality disorder described as an antisocial personality, placed on medication and discharged within a month with a final diagnosis "without psychosis." We do not think these remarks can be construed as recognition by the court of a bona fide doubt of defendant's fitness. The trial court obviously meant that it had examined defendant's mental history as discussed in the presentence report and had found no bona fide doubt of his fitness. The statutory procedures thus were not applicable and the court did not err in failing to conduct a separate hearing on defendant's fitness.

Nor do we believe that a constitutional question was raised as to defendant's fitness. Defendant argues that his case contains factors iden-

tical or much similar to those present in *Drope v. Missouri*, 420 U.S. 162, 43 L.Ed.2d 103, 95 S.Ct. 896 (1975). In *Drope*, the Supreme Court held that defendant's attempted suicide during trial, when considered with prior mental examinations and the testimony of his wife, the prosecuting witness, that he was sick and in need of mental help, raised a bona fide doubt of his fitness to stand trial. Here defendant neither behaved irrationally during the proceedings below nor did he manifest difficulties in participating in his psychiatric examinations. Nor did Ronald Pack exhibit the compelling irrational and disabling behavior demonstrated in *Pate v. Robinson*, 383 U.S. 375, 15 L.Ed.2d 815, 86 S.Ct. 836 (1966). While defendant here did possess some of the psychiatric history present in *Drope* and *Pate*, we believe that this case can be fit within the rules of these cases only by a tortured interpretation of the facts of this case.

■■ . Defendant also argues that entry of judgment on the robbery charge was improper, either because no conviction of robbery can stand where no sentence was imposed, or because the robbery arose from the same course of conduct as the attempt murder. Although defendant was convicted of two charges, the trial court imposed but one sentence, a term of from four to forty years. This sentence would be impermissible for a charge of robbery, but is appropriate for attempt murder. (Ill. Rev. Stat. 1973, pars. 18—1, 8—4a, 9—1, 1005—8—1(b) (1), (3).) Thus it appears that defendant was not sentenced on the robbery charge and no final judgment was entered on that offense. (*People v. Becker*, 414 Ill. 291, 111 N.E.2d 491 (1953); *People v. Lilly*, 56 Ill.2d 493, 496, 309 N.E.2d 1, 2 (1974).) In the absence of a sentence an appeal cannot be entertained. (*People ex rel. Filkin v. Flessner*, 48 Ill.2d 54, 268 N.E.2d 376 (1971); *People v. Lilly*.) This case is properly before us, however, on defendant's conviction for attempt murder and we have the power under Supreme Court Rule 366 (58 Ill.2d R. 366) to examine an incomplete judgment to determine if it must be vacated. *People v. Lilly*; *People v. Hood*, 59 Ill.2d 315, 319 N.E.2d 802 (1974).

■■ The factual basis of the pleas established that defendant had been employed by his victim to do odd jobs, but had not been paid for his most recent work. Defendant looked through a window of the victim's house and saw her asleep. He then entered the house, choked her until he thought she was dead, took money from her purse, lying on a nearby chair, and fled. We believe that, although the facts adequately supported the attempt conviction, no factual basis was established to support the robbery charge. Force was used against the victim with the intent to kill, not to steal. The subsequent taking of property, apparently an afterthought, established only theft, which is not a lesser

included offense of robbery. (*People v. Yanders,* 32 Ill.App.3d 599, 335 N.E.2d 801 (1975).) The robbery conviction must be reversed. Because of the view we take of this issue, we need not consider defendant's contention that the two offenses arose from the same course of conduct. We note, however, that had defendant been charged with theft rather than robbery, we would have had no difficulty sustaining separate convictions and sentences for the two offenses, the first an act of vengeance against a person, the second the unrelated theft of her property.

■■ Defendant finally contends that the trial court erred in imposing a forty-year maximum sentence. This sentence is within the statutory limits for attempt murder and therefore should be disturbed only if an arbitrary and capricious abuse of discretion is apparent. (*People v. Young,* 30 Ill.App.3d 176, 332 N.E.2d 173 (1975).) It is not the function of a reviewing court to impose sentence, and we will not substitute our judgment for that of the trial court. (*People v. Young; People v. Petty,* 25 Ill.App.3d 35, 322 N.E.2d 603 (1975).) However, all penalties are to be determined "both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. (1970), art. I, § 11.) A maximum sentence should be determined by "the court's divination" of the length of time needed to achieve rehabilitation (*People v. Helms,* 133 Ill.App.2d 727, 734; 272 N.E.2d 228, 233 (1971)), which will include consideration of the defendant's history and character and the nature of the offense committed. (See *People v. Odom,* 8 Ill.App.3d 227, 289 N.E.2d 663 (1972).) Applying these principles to the instant appeal, we do not believe that the trial court abused its discretion. The psychiatric reports indicated that defendant required incarceration for the successful treatment of his explosive, aggressive behavior, and that outpatient treatment could be successful only when he thoroughly learned that he must remain on medication and be under the supervision of personnel at a community health center. The reports reflect that defendant had pleaded guilty to a charge of theft of over $150; that he had once taken a stolen automobile across the State line; that he had a history of problems in the Army which resulted in a dishonorable discharge; that he was unable to hold a job for more than a brief period of time; and that he once had been admitted to the Anna State Hospital after he had sexually abused a six-year old female. In the instant offense, defendant had choked a former employer until he saw "the death stare." These facts, together with the conclusion of the examining physician and psychiatrist that defendant consistently failed to assume any responsibility for his actions, we believe sufficiently support the maximum sentence imposed. The trial court expressly indicated that it was most concerned by defendant's

repeated shirking of responsibility for his acts and that it believed a forty-year maximum might be necessary to insure defendant's rehabilitation to useful citizenship when released on parole. Were we sitting as a trial court, we might have imposed a lesser maximum; however, we do not believe that the trial court arbitrarily and capriciously imposed the instant sentence.

■■ Moreover, the Pardon and Parole Board is endowed with authority to admit defendant to parole, and to discharge the defendant from conditions of parole before the maximum sentence would otherwise expire. (Ill. Rev. Stat. 1973, ch. 38, pars. 1003—3—2, 1003—3—8.) The Board has the duty and ability to maintain an ongoing relationship with defendant both in prison and after his release. This continuing supervision and the Board members' various expertise is much better suited to determine when a defendant is rehabilitated than any speculative opinion which we can now offer. (*People v. Young.*) Thus our decision does not preclude defendant from gaining his release from prison and discharge from parole before he has served his maximum sentence.

For the foregoing reasons, the judgment of the Circuit Court is vacated insofar as it entered judgment on the plea to the robbery charge and is affirmed in all other respects.

Affirmed in part; vacated in part.

JONES and G. J. MORAN, JJ., concur.