THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY GRAY, Defendant-Appellant.

Fifth District   No. 78-466

Opinion filed January 14, 1980.

John H. Reid and Gary D. Duncan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mme JUSTICE SPOMER delivered the opinion of the court:

Defendant-appellant Larry Gray was convicted of robbery after a jury trial in the Circuit Court of St. Clair County. He was sentenced to 90 days' confinement in the county jail and to probation for four years. On appeal, the defendant contends that the evidence was insufficient to prove the offense of robbery as the record demonstrates no use of force, and that the trial court erred in improperly instructing the jury that his statement to the police constituted a confession to the crime charged.

Fannie Boykin, the complainant, testified for the State that while she was waiting for the bus on a street corner in East St. Louis, the defendant approached. While he engaged her in conversation, another young male, later identified as Robert James, ran from behind and grabbed her purse, which was resting on her left arm near the elbow. Both men then fled, were subsequently found by the police and arrested. Defendant was charged with and convicted of robbery under an accountability theory. Ill. Rev. Stat. 1977, ch. 38, pars. 5—2, 18—1.

The only evidence at the trial relating to the extent of force used to take the purse was the testimony of Mrs. Boykin. She was asked the following questions by the prosecutor on direct examination:

"Q. Now, Fannie, so that the jury can understand, did the other man come from behind you? Would you show the jury what the man who this defendant was with, did? Just what he did that particular day? Just what did the man do the defendant was with?

A. He got my purse. See, I—

Q. Did he pull it from your person?

A. You see, I just had it out like this and I had my card and he just got it over that way.

Q. Did he jerk it?

A. He did it just like that and he went on about his business, and Lord have mercy.

Q. Now, after the other man took the purse, what did the man who took your purse do?

A. Say, when he took the purse?

Q. After he jerked it out of your arm.

A. They run."

While the defendant contends this was not sufficient evidence of the use or the threat of the imminent use of force, a necessary element in a robbery conviction, the State counters that the act of removing the purse from the victim's arm was the equivalent of force, since the victim did not give the purse away. In his closing argument, the prosecutor said:

"James comes around, grabs the purse, force is used, ladies and gentlemen. Force is one of the elements we must prove. She is like this and he grabs it away. It is on her person and force is used. How else would it have gotten into James' hands except by the use of force? She didn't give it to him * * *."

■■ The Supreme Court of Illinois in the recent case of *People v. Patton* (1979), 76 Ill. 2d 45, 389 N.E.2d 1174, considered the question of whether the simple taking or "snatching" of a purse from the fingertips of its unsuspecting possessor in itself constitutes a sufficient use of force, or threat of the imminent use of force, to warrant a conviction for robbery. The facts in that case are similar to those in the case at bar, except the victim there held her purse in her fingertips, while Mrs. Boykin's purse rested on her arm near the elbow, and in *Patton* the victim's arm was thrown back "a little bit." Neither victim realized what was happening until the assailant had begun his flight, and neither resisted nor was injured in any manner. The court there held that such a simple snatching or sudden taking of property from the person of another does not of itself involve sufficient force to constitute robbery, although the act may constitute a theft. (See Ill. Rev. Stat. 1975, ch. 38, par. 16—1.) The court rejected the State's argument that any amount of force exerted by the victim to maintain control of the property is sufficient to satisfy the requirement of the robbery statute; otherwise, the distinctions between theft from the person and robbery would be meaningless. *Patton* did not change existing law. The Illinois Supreme Court in the case of *Hall v. People* (1898), 171 Ill. 540, 542-43, 49 N.E. 495, 496, said that where an article is taken "without any sensible or material violence to the person, as snatching a hat from the head or a cane or umbrella from the hand," the offense is held to be theft from the person rather than robbery. If a struggle ensues for possession of the property (*People v. Chambliss* (1966), 69 Ill. App. 2d 459, 217 N.E.2d 422), the victim is injured in the

taking (*Klein v. People* (1885), 113 Ill. 596), or the property is so attached to the victim's person or clothing as to create resistance to the taking (*People v. Campbell* (1908), 234 Ill. 391, 84 N.E.1035), then such an act may constitute robbery. No such evidence is found here. There is simply no testimony with respect to any force or violence on the person of the victim.

■■ The State further contends that since Mrs. Boykin demonstrated physically how her purse was taken and the jury found defendant guilty, it must be presumed that she demonstrated sufficient use of force to sustain the trial court's judgment; and that the failure of the record on appeal to be complete in this respect must be resolved against the appellant, citing *People v. Butler* (1976), 41 Ill. App. 3d 750, 354 N.E.2d 568. We do not find *Butler* to be dispositive of our case, however. In that case, nine pages of police reports were admitted in evidence by stipulation, but the reports were not included in the record on appeal. The court correctly held under the facts of that case that where issues are raised relating to material in those reports, it was the appellant's duty to include the reports in the record on appeal. We are confronted in our case, however, with incomplete testimony on behalf of one of the State's witnesses, rather than an incomplete record. Since the State has the burden of proof, it was not the defendant's duty to supply information in the record as to what movements the court and jury saw from this witness, if any. Nor do we find *Campbell,* as contended by the State, to be controlling. There the victim was wearing a diamond pin or stud, which was fastened in his shirt front; he felt a jerk and saw the pin in defendant's hand. He then struggled with the defendant for possession of the item. In affirming a judgment of conviction, the court reiterated the rule that if the article is so attached to the person or clothes as to create some resistance, however slight, or if there is a struggle to keep the article, the taking is robbery. (2 Bishop, New Criminal Law §1167; 1 Wharton on Criminal Law §854 (9th ed.).) No such resistance was shown in the case at bar.

■■ Since defendant was not charged with the specific intent crime of theft from the person, which crime is not a lesser-included offense of robbery, defendant's conviction must be reversed without remand. It is, therefore, unnecessary to address the issue of whether the jury was erroneously instructed.

Reversed.

JONES, P. J., and KARNS, J., concur.