THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TOBY W. PUMPHREY, Defendant-Appellant.

Fifth District   No. 82—387

Opinion filed July 7, 1983.

Robert Weiner and John S. Weiner, both of Springfield, for appellant.

John H. Ward, State's Attorney, of Taylorville (Stephen E. Norris and Karen L. Stallman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, Toby W. Pumphrey, was charged with two counts of murder and one count of voluntary manslaughter in the shooting death of Delmar Williams. Following a jury trial, defendant was found guilty of a lesser included offense, involuntary manslaughter. The circuit court of Christian County entered judgment on the verdict and sentenced defendant to three years' imprisonment.

On appeal, defendant argues that the trial court erred in refusing to instruct the jury on reckless conduct and that the court's substitu-

tion of the assigned trial judge was without authority and acted to deny him a fair trial. We affirm.

Williams' death occurred on October 23, 1981, at the home of defendant and Cheryl Pumphrey. Defendant had been living apart from Ms. Pumphrey for several days but returned to the house in the early morning hours of October 23. He found Ms. Pumphrey cooking at the stove in the kitchen while Williams, a friend of hers, was sitting in the living room. Ms. Pumphrey testified that when defendant saw Williams, he went to the gun cabinet in the living room, unlocked it, and removed and loaded a 12-gauge shotgun. He then told Williams he had two seconds to get out of the house. When Williams did not respond, defendant stepped toward the victim and shoved the shotgun in his side. The gun discharged, killing Williams.

Defendant testified that he warned Williams twice before attempting to scare him out of the house with the gun. He denied loading the gun and testified that he believed it was unloaded.

We turn first to the instructions given at trial. During the instruction conference, defendant tendered an instruction on involuntary manslaughter arguing it was a lesser included offense of the charged offense, voluntary manslaughter and on reckless conduct as a lesser included offense of involuntary manslaughter. The court gave only the involuntary manslaughter instruction.

██ █ Defendant must satisfy two requirements to be entitled to the reckless conduct instruction. First, the lesser offense must be included in the greater offense. A lesser included offense is defined as an offense which contains some but not all of the elements of the greater offense and which contains no element not included in the greater. (Ill. Rev. Stat. 1981, ch. 38, par. 2—9(a); *People v. Cramer* (1981), 85 Ill. 2d 92, 97, 421 N.E.2d 189, 191; *People v. Wys* (1982), 103 Ill. App. 3d 273, 275, 431 N.E.2d 38, 40.) The supreme court has recognized the use of three tests helpful in determining whether an offense is a lesser included offense. The focus of the inquiry can be on the statutory definition of the greater offense, on the greater offense as charged or on the greater offense as proved at trial. *People v. Mays* (1982), 91 Ill. 2d 251, 255, 437 N.E.2d 633, 635.

██ We do not find it necessary to analyze the present case in terms of these three tests. In cases where death occurs, an instruction on reckless conduct is simply improper. Reckless conduct is directed towards the infliction of bodily harm while involuntary manslaughter is concerned with the death of the victim. *People v. Mikel* (1979), 73 Ill. App. 3d 16, 391 N.E.2d 558; *People v. Johnson* (1975), 32 Ill. App. 3d 36, 335 N.E.2d 144.

■ Secondly, the lesser included offense doctrine does not apply unless there is a controversy, or dispute, over the presence of a factual element the proof of which is required in order to constitute the greater offense, that is not an element in the lesser offense. (*People v. Cramer* (1981), 85 Ill. 2d 92, 421 N.E.2d 189.) The parties agree that an element distinguishing involuntary manslaughter from reckless conduct is that the acts performed by defendant "were likely to cause death or great bodily harm." Defendant argues that the disputed fact on this issue is whether or not he loaded the gun or knew that it was loaded. He argues it is necessary for the jury to decide this issue to convict him of involuntary manslaughter but that it is unnecessary to a determination of the reckless conduct charge.

■ We agree with the State, however, that the facts constituting the act likely to cause Williams' death are undisputed—defendant admits he shoved a loaded gun into Williams' body. The knowledge of the loaded condition of the gun goes to defendant's state of mind. Since both offenses require recklessness as the mental state, there is no disputed factual element in the greater offense that is not required for conviction of the lesser. Accordingly, the instruction was properly refused.

■ Defendant has also questioned the propriety of the chief judge's order substituting defendant's assigned trial judge.

In late 1981, Judge Huber presided over defendant's arraignment, preliminary hearing and several motions made by defense counsel. Defendant's trial was assigned to Chief Judge Hickman. In March of 1982, defendant exercised his statutory power to have Hickman disqualified from defendant's trial (Ill. Rev. Stat. 1981, ch. 38, par. 114—5(a)) and Judge Dailey was assigned. Defendant requested a second substitution pursuant to section 114—5 (Ill. Rev. Stat. 1981, ch. 38, par. 114—5(a)) on March 18 and Judge Huber was assigned. Judge Huber made several rulings on March 24 in regard to the motions he heard earlier. On April 5, 1982, Chief Judge Hickman, by docket entry, ordered Judge Frank Schniederjon to conduct all further hearings, including the jury trial, in defendant's case. Notice of the assignment was sent to defense counsel. Defendant objected to the order and following an adverse ruling, filed a motion to vacate the order which was also denied.

Defendant argues first that the chief judge was without authority to make the assignment, and second, that because Judge Huber had already ruled on substantive matters in the cause, assignment of a new judge denied him a fair and impartial trial.

We are not persuaded by either argument. The assignment made

by Chief Judge Hickman was within his general administrative authority granted by article VI of the Illinois Constitution: "[T]he Chief Judge shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court." (Ill. Const. 1970, art. VI, sec. 7(c).) Supreme Court Rule 21(b) explicitly includes the assignment of trial judges as an exercise of this general administrative authority. 87 Ill. 2d R. 21(b).

■ Defendant relies on the decision in *People v. Massarella* (1979), 80 Ill. App. 3d 552, 400 N.E.2d 436, to support his argument that the substitution denied him a fair trial.

The court in *Massarella* stated that even if a motion for substitution of a judge is filed within the 10-day period required by the statute (Ill. Rev. Stat. 1981, ch. 38, par. 114—5(a)), the motion is untimely if it comes after substantive rulings have been made by the assigned judge. The court reasoned that counsel could ascertain the attitude of the judge as to those substantive issues and based on that information, move for substitution. (80 Ill. App. 3d 552, 563, 400 N.E.2d 436, 446.) Defendant argues that the same concern is present, and thus the same rule should apply, when substitution is made by the court. He points out that Judge Huber had made several rulings on motions before Judge Schniederjon was assigned and he claims that the chief judge could have ordered substitution because he was not in agreement with Judge Huber's rulings.

However, we note that defendant has not alleged any specific acts of prejudice nor in our review of the record do we find any evidence of prejudice. Further, defendant could have exercised his right under section 114—5(c) to have Judge Schniederjon removed for cause. (Ill. Rev. Stat. 1981, ch. 38, par. 114—5(c).) At the hearing to remove for cause, defendant could have made the argument now urged on appeal. In light of these considerations, we are unable to conclude that defendant was denied a fair trial.

For the foregoing reasons, the judgment of the circuit court of Christian County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.